You've reserved three minutes. I'll let you know if you run into that rebuttal time. Okay. You may proceed. Mr. Ostro?  Okay. Good morning, Your Honors. May it please the Court, I'm Seth Ostro. I represent the appellant and patent owner, Spring Ventures. We are appealing a ruling by the Board of Patent and Trial Appeals in an IPR that the claims of the patent owner's patent were invalid as obvious over a combination of references, in particular a patent to Belfiore combined with the teachings of a product called EchoSearch as described in an article to Corrin and a patent to Sotomayor. In the blue brief at 42, you assert that Google's expert, Dr. Seamus, is not qualified to be an expert by his own admission. And in the appendix at 44, the PTAB rejects your characterization. They list that Dr. Seamus designed and taught university courses on design and implementation of user interfaces for web-based applications. He's a technical advisor to an internet search engine, was the founder and president of two computer software companies, has a PhD in computer science, and is a distinguished career professor at Carnegie Mellon. How is he not a qualified expert? Dr. Seamus, our opinion was that Dr. Seamus has some expertise. This case required specific expertise in search engine technology, which in the time, the relevant time frame of our invention, the mid to late 1990s, Dr. Seamus was not working in that field and was actually working as a patent attorney. So a lot of what Your Honor's described came afterwards, and since then he certainly has acquired expertise in general computer science knowledge and so forth. What we were trying to do was contrast Dr. Seamus' lack of expertise in the search engine field with the expertise of the three experts that Spring Ventures put forth reports on who were working in that exact field in this time frame. Google asserts that you repeatedly misquote Dr. Seamus in your briefing. Specifically in the red brief at 37, Google provides a quote from your analysis in the blue brief at 29 and 30 regarding the translator entity software and the browser software and then provides the actual quote. The actual quote is at page 37 of the red brief, and I checked the appendix at 2642, and it's correct. You exclude the initial clause of Dr. Seamus' statement in which he says, if that's the case. How isn't that outright misleading? Okay, let me back up. Let's stick with the first one. How is that not a misrepresentation of the record? So I pulled up, Your Honor referenced page 37 of Google's brief. So the point, at least that we were trying to make here, was that the claim refers to there's a translator input window, which is generated by a translator entity. And Dr. Seamus had testified that the translator input window is separate from the browser window. And he had also testified that the translator input window is caused, this is one of our points, is caused by the translator entity. It's generated by it, not the browser. So the conclusion from that is that he's taking the position that the translator entity is separate software from the browser. I believe that is what's. Okay. And then on the same page, 37, Google says you misquote Dr. Seamus because you exclude that initial clause. You quote him as saying a browser can't be operatively coupled to itself. You delete if that's the case. Is that not an outright misrepresentation of his statement? I, so I apologize. I don't remember exactly what the, Google does not explain in the brief, Your Honor, what the assumption was, the underlying assumption that he was saying, if that's the case. But I don't believe that that underlying assumption was something that could be reasonably disputed, so that it was the case. I think that was the point, is that whatever that underlying assumption was, Dr. Seamus and I, during his deposition, had a somewhat engaged in some sophistry about what it means for two parts of something to be operatively coupled to one another, and whether someone's head could be operatively coupled to their hand and so forth. It was this kind of discussion. So whatever that underlying assumption was, in our view it's not in dispute. So that is the case. Well, I have it. It's at 2760. Do you have the record in front of you? I could try to pull it up. I just, Your Honor. Your question is, so then under paragraph 62's assumption, we discussed it at length, so I'm not going to repeat it again. Just under the assumption of paragraph 62, in order to meet the element of a translator entity and the combination, you need to take functionality from Belfiore's auto search and search engine and part of the functionality of echo search and combine them. Is that what's happening to become the translator entity? Yes, if that's the case. That you can't be operatively coupled to a component of yourself. The way you cite it is misleading. Okay. I apologize. I'm not sure that I agree. He said yes. He agreed with the underlying assumption. And then he said if that's the case, meaning yes, he agrees with the assumption and this is the conclusion from it. That's how we read that testimony. That's weak. Okay. Go ahead. Well, we believe that the board has made several errors. One of them is really that they haven't provided substantial and sufficient evidence or explanation to justify why they ignored Spring Venture's evidence. This relates both to claim construction issues. There were three claim construction issues here, as well as the ultimate. You have a lot of issues that you're raising today. Are there the particular ones that you wanted to focus on with your time? I probably should get to that given the time that's left. The key issue probably is really the motivation to combine. Whether it really would have been obvious to combine the teachings of Belfiore with the search engine aspects of EchoSearch. And the board in its conclusion, in our view, really just ignored most of the evidence that was put into the record and failed to make any explanation why or acknowledgement of the evidence or how they reached their conclusion based on that. And they're also mistaken about the conclusion. So now I'm looking at page 32 of the board's decision, and I'm trying to cut to the chase. This is appendix 32, the same page number. And the board has reached several conclusions here about what's taught by the prior art, which does not get to the issue of whether it would have been obvious to combine. The reason is, stepping back for a moment, the EchoSearch system was teaching search engine technology. Search engine technology was, and even to this day, but at the time, producing lists of search results. As all the experts acknowledged, people using search engines expected to get search results. Even Dr. Shamos repeatedly said a number of different times, never cited by the board, never acknowledged by the board, but Dr. Shamos repeatedly said that if he does a search, he expects to get search results. He wants to get search results. That's the point of doing the search. These quotes are in our briefs in their fullest. What the board has done here is they say, well, Corrin teaches, so now I'm about three lines down. It says, thus, Corrin teaches the desirability of limiting or focusing search results, not just expanding or diversifying the search area, as Pat Noerner argues. And he says, accordingly, we are not persuaded by Pat Noerner's argument that Corrin teaches away. So what the board is acknowledging, Corrin, this is EchoSearch, teaches having search results, just having fewer search results, or perhaps better search results, but limiting the search results, but still teaching getting search results. So when someone used EchoSearch, they always got results, meaning they got a list of URLs and links. And they got to look at what came and pick one. All the experts agreed, this is how search engines work. This is how everyone expected them to work. And nobody contemplated doing otherwise. Even Dr. Shamos, who as a lawyer at the time was consulting with one of the search, original search engine companies, which is now defunct. Well, they're all defunct except for the tele. But then the board goes on to say, a little later on in the page, that one of the – question for a different Corrin. Understood, Your Honor. I'm sure there are some startups who would disagree with what I said, but it is what it is. Bankruptcy. Indeed. The board then says, one of ordinary skill in the art, for example, would have been motivated to incorporate Belfiore's redirect feature, i.e. directly retrieve the top search result into EchoSearch because the user would desire a redirect feature for multiple search engine results. This is really the heart of the decision. All the board is saying here is that one of ordinary skill would have been motivated to combine features from this prior art because they would desire it. That's not – that's just a tautology. Motivation and desire are the same thing. In addition, the board has acknowledged that Corrin still teaches getting search results. The board never makes the leap how you would get from something that teaches showing results to something that does not show results, that instead, in Belfiore, simply navigated the user to the webpage that it thought the user wanted without showing the user even a list of one, not even a list of one, no option, just the relevant teaching of Belfiore, simply the user types in some non-correct URL, and they're just taken to whatever the browser has determined that it thinks the user is looking for. The board never makes the leap how you can get from something that teaches having even limited search results, but still search results, to something that doesn't do that. There's no motivation shown other than the board simply stating that there was a desire. What desire? The board... Does the board say that it comes from Belfiore? The desire? Well, Belfiore shows the feature, so in that sense... And Belfiore says that feature is something that's desirable? It's an option in Belfiore. The other option is to show search results. There's two options. But the record is replete with evidence, both from the three experts that were working in the field at the time that Spring Ventures put forth their reports, as well as Dr. Shamos himself repeatedly admitting that when people used search engines, much like the Echo search one, they expected and would get search results and would not think, there'd be no motivation to not provide those search results, but rather simply to navigate the user to whatever they determined was the top result. So, in our view, this is both... You're in your rebuttal time. I'm aware of that, Your Honor. I'm trying to sum up, unless the board has any questions. But the point is that the board has simply gotten this wrong, and in addition has failed to provide the support and acknowledge and explain why it didn't consider any of the evidence. Not once in the discussion of Claim 1, which is the relevant PowerPoint of the relevant discussion, did the board ever acknowledge or mention any of the experts that Spring Ventures put forth. They're not even named. It's not even mentioned at all. The board could have at least said they read the reports, and they're wrong, we disagree because something. They provided some rationale. So this, in our view, is very much like other cases that this court has decided, like Invasive and Intellectual Ventures versus Google, where simply when there's inadequate consideration of the evidence in a board's decision, at the very least, the board needs to take a second look at this, and we ask the court to at least remand it to the board to do that. But more importantly, in our view, the board simply fails to bring this to the finish line. The motivation that the board is claiming is here is unsupported and is wrong. It's just wrong motivation. But if we remand it, then that would give them a chance to declare it ineligible for a patent in the first place, right? I'm sorry, Your Honor. We passed on that question. The one-on-one issue? Is that what Your Honor is asking? Yeah. That issue would have come up as part of the motion to amend the claims, and they passed on that, yes. All right. I'll save my minute and ten seconds. Thank you. May it please the court. I'd like to just clarify what the assumption that was embedded in Paragraph 62 was. This is at Appendix 186. Paragraph 62 says, to the extent that patent owner argues that Belfiore's auto search is not operatively coupled to the browser because it is built into the browser, that was the assumption. The assumption is that two things that are part of the same large entity cannot be operatively coupled. So on that assumption, he answered, then they would not be operatively coupled. Notably, on page 2761, which is just really the next page, next answer given by Dr. Seamus, he says, it refers to the example of one's hand and arm being operatively coupled to the brain, although they're all part of me. It makes perfect sense to say that one part of something can be operatively coupled to a part of another part of something. So he specifically disagrees with the assumption that was embedded in Paragraph 62, and that's why we call that out in the brief. Just to clarify, you said Appendix page 2751? 61, I'm sorry if I misspoke. Going to the motivation to combine the principal references of Belfiore and EchoSearch, the board on pages 31 and 32 of its decision, which are also pages 31 and 32 of the appendix, clearly provides its explanation and the basis for this conclusion. Now remember that a motivation to combine, the court has said in In Re Garta, is a pure question of law. It's reviewed by this court for substantial evidence, and the board amply provides the basis. It starts with something on page 31 that Appellant doesn't reference, and that is the fact that both Belfiore and EchoSearch are directed to the common objective of text search and website retrieval on the internet. So it's not just in the general field of internet searching, but specifically searching using text rather than URLs, and then translating that text to find the appropriate URL. And moreover, the board pointed out the fact that they sort of point in the same direction, because Koren, like Belfiore, expressly teaches the desirability of focusing the number of search results. And they're referencing, this is at Appendix 1659, where Koren explicitly calls out the frustration of having to wade through what he calls the dross of extensive search results. And so he is actually, whereas the patent owner had argued before the board that Koren taught away from Belfiore, the board says, no, actually, Koren likewise teaches toward focusing the search results. It clearly does not teach redirection to the single top hit. But what the board said is that would be a logical extension. And of course, this is not something that we're presupposing in hindsight, because Belfiore itself specifically discloses that redirection to the top hit. And so when it's true that the author of Koren says, I kind of like to see my homework, likewise, Dr. Shamos in his deposition said, well, I personally kind of like to see a number of results so that I can make my own judgment about this. That's not the question. The question is whether it would have been obvious to take what Belfiore has already disclosed, as in some circumstances a desirable thing, which is just take me to the top hit. Your point is that in this article, that the author didn't want to limit the search results to 10 doesn't mean that somebody else wouldn't want to limit it to one or two. That's right. And so there's no teaching away because we're trying to focus. It's only focusing at 10 at EchoSearch. But, you know, another person would have seen the desirability of redirecting automatically to one. And so the board is explicitly referencing the evidence. It's explicitly referencing the testimony of the experts. And I think that given the standard of review, there's no question that there is ample, substantial evidence to support that finding. If the court has no further questions about the other issues on the appeal. Thank you very much. You mentioned the magic words, standard of review. Just for the record, to clarify, that discussion between myself and Dr. Chemist is exactly what I was referring to. The disagreement as to whether two things that are components of something can be coupled versus something that's a component being coupled to the entirety of the body. Again, I characterize it as sophistry. I don't want to waste time with this, but that is exactly the point that I was trying to make earlier. Dr. Chemist and I were having trouble communicating on that issue. Your head could be coupled to your arm, but in our position, your arm can't be coupled to your body because it's part of your body. So part of something can't be coupled to the entirety because it's already in it. That was sort of the discussion that counsel was referring to from the next page, which is what I was trying to describe earlier. Nothing counsel said disputes the fact that Corrin still was teaching getting search results. And all of the experts, including Apelli's expert, acknowledged that that's how this worked at the time. When Dr. Shamos said this was his preference, he's their expert from someone who supposedly consulted with Lycos, an early search engine company. Nobody thought of designing it this way. That's our point. I see my time is up, so unless the court has any questions. Thank you, counsel. The matter will stand submitted.